IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN YOUNG,

       Plaintiff,

v.                                                                              CV 14-346 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.

MEMORANDUM OPINION AND ORDER

John Young originally applied for Disability Insurance Benefits on January 7, 2008, and Supplemental Security Income on March 13, 2008, based on degenerative disc disease and radiculitis. (Administrative Record ("AR") 48-49.) After his applications were denied at all administrative levels, he brought a petition for judicial review. *Young v. Astrue*, No. Civ. 1:11-0478 WPL. I granted Young's motion to reverse and remand, and remanded the case to the Social Security Administration ("SSA") for further proceedings consistent with my March 19, 2012, Memorandum Opinion and Order. *Id.* at Doc. No. 27. On remand, Administrative Law Judge ("ALJ") Ann Farris held a hearing (AR 358-90), and subsequently determined that Young did not qualify for disability benefits because he could adjust to other jobs available in significant numbers in the national economy (AR 349-50). The case is before me now on Young's Motion to Reverse or Remand Administrative Agency Decision and his supporting Memorandum, the Commissioner of the SSA's ("Commissioner") Motion for Remand in lieu of a response, and Young's response to the Commissioner's motion. (Docs. 17-18, 21, 22.)

The parties agree that the ALJ erred at step five of the sequential evaluation process, but disagree as to the scope of remand. Young contends that the ALJ also erred in her Residual Functional Capacity ("RFC") assessment during phase one of step four by failing to properly evaluate opinion evidence from a consultative physician and from a non-examining psychologist. The Commissioner disagrees. For the reasons explained below, I grant Young's motion and remand this case to the SSA for proceedings consistent with this opinion.

## STANDARD OF REVIEW

In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is only a scintilla of evidence supporting it. *Hamlin*, 365 F.3d at 1214 (quotation omitted). However, substantial evidence does not require a preponderance of evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *See Hamlin*, 365 F.3d at 1214 (quotation omitted). I may reverse or remand if the ALJ has failed "to apply the correct legal standards, or to show us that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2014). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's RFC. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to see if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to his past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Young is a forty-three-year-old man with an eleventh-grade education. (AR 371-72.) He worked in various landscaping, stocking, and janitorial jobs from 1993 through 2004, and worked as a janitor and supervisor from 2005 through June 2008. (AR 41, 187.)

The parties agree that remand is required, but disagree as to the scope of remand. Young argues that the ALJ erred at step four by failing to properly evaluate the opinion evidence of consultative examiner John Vigil, M.D., and by ignoring findings from non-examining psychologist Carol Mohney, Ph.D, and at step five because the ALJ's findings that there are jobs available in significant numbers that Young could perform is not supported by substantial evidence. The Commissioner agrees that the ALJ erred at step five, but contends that remand is only necessary to obtain new Vocational Expert ("VE") testimony as to whether there are jobs in significant numbers in the national economy that Young can perform. Because the dispute is limited to the treatment of Drs. Vigil and Mohney, and to the step five findings, I focus my discussion on these issues.

Young began seeking treatment for chronic low back pain in September 2007. (AR 219.) All of his medical treatment comes from various clinics at the University of New Mexico Hospital. A December 28, 2007, MRI of Young's lumbar spine showed mild straightening of the lumbar lordosis, degenerative endplate signal changes around the L5-S1 disc space, loss of normal disc height at L5-S1 and L4-L5. (AR 235.) The assessment indicates that a diffuse disc bulge at L5-S1, slightly asymmetric towards the right, was causing mild inferior neural foraminal narrowing and could impinge on the traversing right S1 nerve root at the level of the lateral recess. (AR 236.)

Young began treatment with Harvey Mallory, M.D., at the Pain Management clinic on February 13, 2008. (AR 202.) On March 19, 2008, Dr. Mallory noted that Young had positive

facet loading signs in the distal lumbar spine, and assessed Young with chronic low back pain secondary to L5-S1 degenerative disc disease with degenerative endplate changes. (AR 200.) Dr. Mallory wrote a letter, dated August 6, 2008, stating that he had been treating Young since February 2008. (AR 323.) Dr. Mallory wrote that Young had attempted physical therapy, injections, and medication to no avail. (*Id.*) Young's condition, said Dr. Mallory, is both chronic and progressive, such that work related activities gradually brought his condition "into a disabling reality." (*Id.*) Dr. Mallory recommended that Young follow up with an orthopedic surgeon for further treatment options. (*Id.*) Another letter from Dr. Mallory, dated August 15, 2008, indicates that Young suffers from severe degenerative disc disease at L5-S1, which creates debilitating pain in his lumbar spine and prevents him from performing work of any kind. (AR 324.)

On January 7, 2010, Young asked Dr. Mallory if he would ever be able to work again. (AR 875.) Dr. Mallory wrote that Young probably would be able to work again, but it would be in his best interests to look into occupations requiring less physical labor. (*Id.*) Dr. Mallory further opined that the L5-S1 junction was likely to fully fuse within the year, which would reduce Young's pain. (AR 876.)

On August 1, 2012, Susan Flynn, Ph.D., performed a consultative psychological evaluation of Young for the state agency. (AR 1047-50.) Young told Dr. Flynn that he was kicked out of school after the eleventh grade and had failed the GED twice. (AR 1048.) Young said that he became depressed in 2011 after his long-term girlfriend broke up with him. (*Id.*) Young admitted to smoking marijuana for pain and reported his medications as morphine, baclofen, Percocet, gabapentin, Paxil, and testosterone injections. (AR 1048-49.) Dr. Flynn conducted an abbreviated mental status examination on Young. (AR 1049.) Dr. Flynn noticed

that Young's motor activity seemed reduced from pain in his back and legs and that he exhibited a constricted affect with a fatigued energy level. (*Id.*) Young related feelings and moderate symptoms of anxiety and depression. (*Id.*) Dr. Flynn noted that Young could read, but seemed to have some comprehension problems, and exhibited mildly impaired insight. (*Id.*) Young presented as tearful and helpless. (*Id.*) Dr. Flynn diagnosed Young with moderate and recurrent major depressive disorder and generalized anxiety disorder. (AR 1050.) He had a past GAF score of 55 and a present GAF score of 45.[1] (*Id.*)

On June 13, 2013, Dr. Mohney, a non-examining psychologist, performed a mental RFC assessment of Young. (AR 473-75.) Dr. Mohney determined that Young is moderately limited in his ability to understand and remember detailed instructions, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 473-74.) In terms of social interactions, Young is moderately limited in his ability to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR 474.) Dr. Mohney concluded that Young's allegations of depression and anxiety are credible. (AR 475.)

Dr. Vigil conducted a consultative examination of Young at the behest of Young's attorney on September 12, 2013. (AR 1251-55.) Dr. Vigil wrote that he spent an hour reviewing medical records and half an hour with Young, who presented as a credible and reliable historian.

---

[1] The GAF is "a hypothetical continuum of mental health-illness" assessed through consideration of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005). A score between forty-one and fifty is assessed when the patient is believed to have "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." *Id.* A score between fifty-one and sixty is assessed when the patient is believed to have "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." *Id.* Although the fifth edition of the *DSM* dropped the GAF rating in 2013 in favor of an alternative assessment schedule, Young's mental health providers used this scoring method.

(AR 1251.) Young filled out a Pain Disability Questionnaire, with a score of 142 out of 150, indicating a severe problem with chronic pain, and the QuickDASH, with a score of 60 out of 100, indicating a moderate problem with activities of daily living. (AR 1052.) Young presented with a mildly flat affect and depressed mood and had moderate and appropriate pain behaviors. (AR 1254.) Dr. Vigil wrote that he did not "suspect symptom magnification or malingering behavior." (*Id.*) Young's gait was slow and guarded, with an antalgic gait; he could not heel or toe walk, squat, or hop. (*Id.*) Young exhibited positive facet loading signs and had a positive straight leg raise test bilaterally. (*Id.*) Dr. Vigil wrote that it was his "opinion that within a reasonable medical probability[, Young] is totally and completely disabled secondary to his chronic pain and co-morbid psychiatric conditions." (AR 1255.) Dr. Vigil further opined that Young has been unable to perform anything more than sedentary work on a full-time basis since 2009, and has been disabled since 2009. (*Id.*)

Dr. Vigil then filled out a Medical Assessment on September 24, 2013. (AR 1256-57.) Dr. Vigil concluded that, because of his severe degenerative disc disease, Young could occasionally lift less than ten pounds and frequently lift less than five pounds, could stand or walk for less than two hours in an eight-hour workday, could sit for less than four hours in an eight-hour workday, and could engage in limited pushing and pulling. (AR 1256.) Dr. Vigil determined that Young could occasionally kneel or crawl, but could never stoop or crouch. (*Id.*) He found that Young had slight limitations maintaining attention and concentration for extended periods, sustaining an ordinary routine without special supervision, and making simple work-related decisions. (AR 1257.) Additionally, Young had moderate limitations performing activities within a schedule, maintaining regular attendance and punctuality within customary tolerance, and working in coordination with or proximity to others without being distracted by

7

them. (*Id.*) Finally, Young had marked limitations maintaining physical effort for long periods without a need to decrease activity or pace or to rest intermittently, completing a normal workday and workweek without interruptions from pain or fatigue-based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. (*Id.*)

**HEARING TESTIMONY**

At the hearing on September 25, 2013, the ALJ questioned a VE. (AR 382-86.) Regarding the ALJ's first hypothetical, the VE testified that an individual who is limited to sedentary work, except that he can occasionally climb stairs, balance, stoop, kneel, crouch, or crawl, and can never climb ladders or scaffolds, would be unable to perform Young's past relevant work. (*Id.*) The VE further testified that such a person would be able to work as a final assembler, which is unskilled, sedentary work, with a Special Vocational Preparation ("SVP") of 2, and 2,053 jobs in the regional economy; as a dowel inspector in woodworking, which is unskilled, sedentary work, with an SVP of 2, and 95 jobs in the regional economy; or as a stone setter, which is unskilled, sedentary work, with an SVP of 2, and 300 jobs in the regional economy. (AR 384-85.)

For the second hypothetical, the ALJ asked the VE if the person described in the first hypothetical, with the additional limitation of having only occasional and superficial interactions with the public and coworkers, would be able to do the jobs previously described. (AR 385-86.) The VE testified that such a person would still be able to do the listed jobs. (AR 386.) Finally, in the third hypothetical, the ALJ asked if such a person, who was required to alternate between sitting and standing roughly every thirty minutes, would be able to do those jobs. (*Id.*) The VE testified that such a person would not be able to perform any of the listed jobs. (*Id.*)

Young's attorney asked the VE if a person who is limited to standing and walking for two hours in an eight-hour workday would be able to do the listed jobs. (AR 386-87.) The VE testified that such a person would be able to do the jobs. (AR 387.) Young's attorney then asked if a person who was limited to standing and walking for less than two hours in an eight-hour workday and sitting for less than four hours in an eight-hour workday would be able to do those jobs. (*Id.*) The VE testified that such limitations would rule out the listed jobs. (*Id.*) Finally, Young's attorney asked the VE if an individual who would be off-task for thirty percent of the workday, due to various mental limitations, would be able to perform the listed jobs. (AR 387-88.) The VE testified that such a person would not be able to perform the jobs. (AR 388.)

## THE ALJ AND APPEALS COUNCIL'S DECISIONS

At phase one of step four, the ALJ determined Young's RFC, finding that Young can perform sedentary work, except that he can occasionally balance, stoop, kneel, crawl, or climb stairs; can never climb ladders or scaffolds; and can have no more than occasional, superficial interactions with the public or with coworkers. (AR 343.)

The ALJ discussed Young's treatment history and specifically noted Dr. Mallory as Young's treating physician. (AR 344, 346.) The ALJ noted that Dr. Mallory opined that Young could not perform his past work as a janitorial supervisor because of his physical limitations, but he did not set forth specific physical limitations and "did not rule out the possibility of [Young] performing less strenuous work." (*Id.*) The ALJ summarized Dr. Mallory's opinion as being that Young could not return to his previous work as a janitorial supervisor, but could perform other, less strenuous work. (AR 348.) The ALJ accorded "great weight" to Dr. Mallory's opinion in this regard. (*Id.*)

The ALJ stated that she gave "little weight" to Dr. Vigil's opinion. (*Id.*) The ALJ wrote that it was unclear why Young sought a consultative examination and opinion, when there was an available treating physician—Dr. Mallory—who could complete the medical source statement forms. (*Id.*) The ALJ concluded that Dr. Vigil's findings of antalgic gait and positive straight leg raises bilaterally were inconsistent with Dr. Mallory's findings throughout the course of treatment. (*Id.*) The ALJ further found that Dr. Vigil's report included inconsistencies: for example, Dr. Vigil determined that Young could lift less than ten pounds occasionally, even though Young told Dr. Vigil that he could lift fifteen to twenty pounds. (*Id.*) Finally, the ALJ found inconsistencies where Dr. Vigil opined that Young was "totally and completely disabled" due to his conditions, but went on to write that he thought "Young's disabilities . . . preclude[d] him from performing anything more than sedentary work on a full-time and sustained basis from at least 2009." (*Id.*)

The ALJ gave limited weight to Dr. Flynn's opinion. (AR 349.) The ALJ then gave great weight to the opinions of non-examining state agency physicians who opined that Young could perform work at the sedentary level, with sufficient postural limitations. (*Id.*) The ALJ also gave "significant weight" to the opinions of non-examining consultants who found that Young's mental impairments were severe, but that he had no episodes of decompensation, mild restriction on activities of daily living, moderate difficulties with social functioning, and mild difficulties with concentration, persistence, or pace. (*Id.*) The ALJ did not accept Dr. Mohney's limitation to simple work. (*Id.*)

The ALJ then determined that Young could not perform his past relevant work. (*Id.*) At step five, the ALJ relied on the VE's testimony to determine that Young could perform

representative jobs such as final assembler, dowel inspector, and stone setter. (AR 350.) Based

on this determination, the ALJ concluded that Young is not disabled. (*Id.*)

DISCUSSION

Young makes two broad arguments in favor of reversal and remand. First, Young argues

that the ALJ erred at step four by failing to properly evaluate medical opinion evidence from

Drs. Vigil and Mohney and by failing to support the RFC with substantial evidence. Second,

Young argues that the ALJ's conclusion at step five is not supported by substantial evidence.

Because I find that the ALJ erred at step four, I do not reach the issue of substantial evidence at

step five.

### I.       Dr. Vigil's Opinion

Young argues that the ALJ erred with respect to Dr. Vigil's opinion by failing to evaluate

the opinion in accordance with 20 C.F.R. §§ 404.1527(c), 416.927(c), and Social Security Ruling

("SSR") 96-5p, 1996 WL 374183 (July 2, 1996).[2] Young also argues that the ALJ's decision at

step four is not supported by substantial evidence.

The ALJ is required to "evaluate every medical opinion," and to "consider [six] factors in

deciding the weight [to] give to any medical opinion." 20 C.F.R. §§ 404.1527(c), 416.927(c).

When evaluating medical opinions, the ALJ must consider the examining relationship, the length

and nature of the treatment relationship, the supportability of the opinion, the consistency of the

opinion with the record as a whole, specialization of the provider, and other factors brought to

the ALJ's attention. *Id.* Here, the ALJ noted that Dr. Vigil was a consulting examiner who saw

Young only once, and she determined that Dr. Vigil's findings were inconsistent with treatment

---

[2] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally
defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational
statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v.
Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

records from Dr. Mallory over the course of many visits. (AR 348.) Additionally, the ALJ noted that Dr. Vigil's opinion was internally inconsistent. (*Id.*)

The ALJ addressed that Dr. Vigil was an examining physician, but not a treating physician. 20 C.F.R. §§ 404.1527(c)(1-2), 416.927(c)(1-2). She addressed the consistency of Dr. Vigil's opinion with the rest of the record, particularly Dr. Mallory's treatment records, and compared Dr. Vigil's opinion to other treatments records in his history. 20 C.F.R. §§ 404.1527(c)(3-4), 416.927(c)(3-4). There is no information as to what type of medicine Dr. Vigil practices and Young did not raise additional factors for the ALJ to consider. 20 C.F.R. §§ 404.1527(c)(5-6), 416.927(c)(5-6). The ALJ evaluated Dr. Vigil's opinion in accordance with 20 C.F.R. §§ 404.1527(c), 416.927(c).

As support for her determination to accord Dr. Vigil's opinion little weight, the ALJ stated that Dr. Vigil's findings of antalgic gait and a positive straight leg raise test were inconsistent with Dr. Mallory's findings. (AR 348.) The ALJ pointed to a February 18, 2013, note from Dr. Mallory. The note stated that Young continued to have positive facet loading signs and diminished range of motion, as well as point tenderness at the base of the lumbar spine, but made no mention of antalgic gait or a straight leg raise test. (AR 1063.)

The ALJ did not address the numerous visits at which Dr. Mallory noted an antalgic gait, a positive straight leg raise test, or both, including May 12, June 28, and July 23, 2008, and January 14, February 11, March 25, April 22, May 20, and June 18, 2009 (AR 253, 255, 284, 294, 297, 300, 302, 306, 997). This does not take into account the appointments with other providers during which Young exhibited an antalgic gait, positive straight leg raise test, positive facet loading signs, or decreased range of motion. (*See, e.g.*, AR 783, 810, 814, 818, 833.) The scintilla of evidence pointed to by the ALJ to support her conclusion that Dr. Vigil's findings

were inconsistent with Dr. Mallory's findings is overwhelmed by the evidence of record. Therefore, I conclude that this finding is not supported by substantial evidence. *See Wall*, 561 F.3d at 1052 (explaining that "substantial evidence" requires evidence that a reasonable person might accept as sufficient to support a conclusion).

Additionally, the ALJ states that Dr. Vigil's opinion is internally inconsistent because he writes that Young is completely and totally disabled, and then writes that Young's disabilities prevented him from performing more than sedentary work since at least 2009. (AR 348.) Young concedes that the opinion may be internally inconsistent, but argues that this is not a sufficient basis for rejecting Dr. Vigil's opinion. As Young points to no legal authority for this proposition, I do not review it.

The ALJ failed to support her analysis of Dr. Vigil's opinion by substantial evidence. Therefore, I remand this case to the ALJ at step four to examine the record and compare Dr. Vigil's opinion to the findings of Dr. Mallory and others. *See Hamlin*, 365 F.3d at 1214 (allowing remand when the ALJ fails to support the decision with substantial evidence).

## II.    Dr. Mohney's Opinion

Young argues that the ALJ impermissibly cherry-picked elements of Dr. Mohney's opinion and failed to explain why she did not adopt other parts into the RFC, in violation of SSR 96-8p, 1996 WL 374184 (July 2, 1996), and *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (stating that an ALJ may not pick and choose which elements of an uncontradicted medical opinion to believe, and relying on only those portions that favor a finding of nondisability).

The ALJ gave "significant weight to the opinions of the nonexamining state agency [psychological] consultants," and adopted into the RFC Dr. Mohney's limitation on Young's

ability to interact with co-workers and the public, but did not adopt Dr. Mohney's limitations on Young's ability to remember and understand detailed instructions or to perform at a consistent pace. (AR 349.) The ALJ references a "finding of only mild difficulties with regard to concentration, persistence or pace, and Dr. Flynn's findings on mental status examination" as reasons to not limit Young to simple work. (*Id.*) It is unclear who made the "finding of only mild difficulties" and Dr. Flynn did not make a finding as to Young's ability to maintain concentration, persistence or pace (*see* AR 1049), though Dr. Mohney found Young to be "moderately limited" in this regard (AR 474).

The ALJ must explain the weight assigned to medical opinions and must consider the factors in 20 C.F.R. §§ 404.1527(c), 416.927(c), when evaluating medical opinions. *See also Quintero v. Colvin*, 567 F. App'x 616, 619 (10th Cir. 2014) (unpublished). When the ALJ fails to properly evaluate medical source opinions, the case must be remanded. *Quintero*, 567 F. App'x at 621.

The ALJ failed to explain why she disregarded this limitation in the RFC. Without an explanation as to why the ALJ disregarded Dr. Mohney's limitations in the RFC, I must conclude that the ALJ failed to properly evaluate Dr. Mohney's opinion under 20 C.F.R. §§ 404.1527(c), 416.927(c), and SSR 96-8p. Therefore, the ALJ is instructed to re-evaluate Dr. Mohney's opinion on remand and either include in the RFC limitations on Young's ability to remember and understand detailed instructions and to perform at a consistent pace or provide reasons as to why the opinion is rejected on those points.

Because I find that the ALJ erred at step four of the sequential evaluation process, I do not address Young's remaining contention that the ALJ's finding at step five was not supported by substantial evidence.

## CONCLUSION

I find that the ALJ erred at step four by failing to properly evaluate Dr. Mohney's opinion and failing to support with substantial evidence her treatment of Dr. Vigil's opinion. On remand, the ALJ will address all medical source opinions under the guidelines in 20 C.F.R. §§ 404.1527(c), 416.927(c), and any applicable SSRs. The motion is GRANTED, and the case is remanded to the SSA for further proceedings consistent with this opinion.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.